[No. 7753.]

STRAUSS V. BRIER.

1.   CONTRACT—*Construed*—A contract providing for the sale by one party to the other, of a patent right upon the payment of certain specified sums, at specified dates in the future, subscribed by the seller only, and containing no promise of payment by the purchaser, is a mere option, and imposes no liability upon the latter. Even though he has accepted and acted upon it, and paid a portion of the stipulated purchase money no action lies for the residue.   (70, 72)

2.   PATENT RIGHT—*Assingment—Validity*—Under § 4898 of the Revised Statutes of the United States no assignment of a patent for an invention, or of an interest therein, can be said to be valid, unless

recorded in the patent office within three months from the date thereof.

    Plaintiff in his complaint demanded certain moneys as stipulated to be paid for an interest in a patent for an invention. He claimed by assignment from the inventor and patentee, but was not able to produce any assignment. No assignment to him had ever been recorded, and though he had covenanted to deliver to defendant, free of encumbrance "all right" to the patent, within the state of Colorado, he was in no position to comply with his covenant. *Held*, he was not entitled to recover any share of the stipulated purchase price. (70, 72)

*Error to Denver District Court.*—Hon. Greeley W. Whitford, Judge.

Mr. B. C. Hilliard, Mr. J. R. Allphin, for plaintiff in error.

Miss Gail Laughlin, for defendant in error.

Mr. Justice Scott delivered the opinion of the court:

The complaint in this case alleged as a first cause of action, a balance due on a written agreement for the sale of an interest in a patent right, covering the territory of the state of Colorado. It seems necessary, to a proper understanding of this matter, that this agreement should be set out in full, and it is as follows:

"Witnesseth, That for and in consideration of the sum of ten ($10.00) dollars paid to the party of the first part by the party of the second part, the receipt of which is hereby acknowledged, and for the payment of one thousand nine hundred and ninety ($1,990.00) dollars, to be paid to the party of the first part as follows: Nine hundred and ninety ($990.00) dollars on or before three months from the date of this contract and the balance of one thousand ($1.000.00) dollars on or before six (6) months from the date of this contract, the party of the first part hereby agrees to deliver to the party of the second part, free and clear of all encumbrance, whatsoever, all of the right, title and interest in and to the state of Colorado, for the use of the Day's resilient tire filler,

and does hereby grant and convey to the party of the second part his rights, privileges and benefits which he, the party of the first part, now holds, and the party of the first part hereby guarantees and warrants unto the party of the second part that he will defend the party of the second part in his rights to the state in every way against all persons legally claiming, or to claim, the same, and the said party of the first part hereby agrees to deliver over to the said party of the second part all the rights, benefits, titles and grants and conveyances in and to the said state for the use and control of the said party of the second part, the Day's resilient tire filler upon the final payment of the amount stated in this contract, on or before the time specified. That time shall be the essence of this contract, and in case the party of the second part fails to make payment as above stated, then this contract shall be null and void.

"This contract is made in duplicate, each party holding a copy of the same. Party of the first part certifies that he has full right to sell the above, and this contract shall be binding upon the heirs, executors, administrators, assigns and successors of and to the parties hereto."

The complaint further claims, under a second and third causes of action, respectively, the amount of $45 for merchandise and $36 for rent. A demurrer to the first cause was overruled, and the defendant answered, denying generally the allegations of the complaint, except the execution of the contract, and the payments made thereunder, and denying that the allegations in the first cause of action were sufficient in law to constitute a cause of action against defendant. The answer further alleges that the written agreement had been modified on the 26th day of November, 1910, by a reduction in the amount to be paid thereunder, and at a time prior to the maturity of the alleged obligation under the written agreement, and which will hereinafter be more particularly referred to.

The court found for the plaintiff, and rendered judgment in the sum of $705.50. This included the sum of $27 found to be due for merchandise and the sum of $36 for rent, under the second and third causes of action.

It appears that on the 26th day of November, 1910, there had been paid by the defendant below, on the written agreement, the sum of $1,000, leaving a balance unpaid in the sum of $1,000, which under the agreement, was payable on the 6th day of January, 1911, following. On the former date, Brier, the plaintiff, being pressed for money for immediate use, proposed that if Strauss, the defendant, would pay him $600 in cash, and pay a certain account which Brier owed to the firm of Strauss, then estimated to be about $100, he would settle the matter in full. It was finally agreed between them that Strauss should pay $300 in cash, which he then did, and should pay the remaining $300 later, and that he should, in addition, settle the Brier account with the firm of Strauss. Brier contends that the additional $300 was to be paid the following week; while Strauss, corroborated by other witnesses, says he was to pay the additional $300 just as soon as he possibly could, which he was to try to do by the 25th of December following. It further appears that Strauss went to California some time after this, and returned on the 3rd day of February, 1911, and on that day paid Brier an additional $100. This was credited to Brier on the written contract, but it was clearly intended by Strauss to be paid on the later agreement. Later on, and before this suit was instituted, Strauss tendered to Brier $200, together with a satisfaction of the Brier account with the Strauss firm, as full satisfaction of their differences, and repeated the tender on the 18th day of February, before the suit was instituted, and which was both times refused.

The contention of counsel for Brier is that, Strauss having failed to pay the additional $300 within the time he says it was agreed to be paid, such agreement is now void, and the written agreement is in full force and effect, and that therefore Brier is entitled to recover the amount named in the latter. However, under the view we take of the written agreement, and of the later agreement, Brier is not entitled to recovered upon either; therefore it is not necessary to consider the matter of the later

agreement. Nothing is plainer than that the parties entered into an agreement in this respect, and that one of the considerations therefor was an immediate cash payment, at a time when no payments were due. That Strauss acted in entire good faith in his efforts to comply with the terms of the later agreement, as he and his witnesses testify, is clear.

It is likewise plain that this action is brought in a spirit of bad faith, is sought to be sustained upon technicality, and, if it may be sustained at all, must rest upon the testimony of plaintiff, overwhelmingly outweighed by that of other witnesses. Defendant denies the right of the plaintiff below, to recover under the first cause of action, that is to say, under the written contract, either in its original form or as amended by the change in the time and amounts by the subsequent agreement. This question was raised in the court below by a motion for judgment on the pleadings as to such cause of action, and also by a motion for nonsuit.

It appears that the thing agreed to sold under the contract, and referred to therein as ''Day's resilient tire filler,'' was an alleged right, under United States patent, for some sort of process to be used in connection with auto tires. The plaintiff, Brier, testified that at the time of the agreement, one Day, who lived in the state of Texas, had applied to the government for a patent on this process; that at the time of the agreement here involved he had some sort of a written contract with Day, to the effect that in case Day should be granted a patent he would sell to Brier the rights thereunder, for the state of Colorado, with immediate permission to Brier to use the process, which he was then using, within this state. He further testified that he had not delivered or assigned this agreement to defendant Strauss; also that he had lost it about a year before the trial; did not know where it was; had not requested either a new agreement or a copy of the original from Day. Further, that Day had written him to the effect that a patent had been granted, but he had not made to Brier an assignment of any rights

under any such patent, and that he (Brier) had no *personal* knowledge of the issuance of a patent. It is clear from Brier's testimony that, neither at the time of the agreement sued on, nor at any time since, has he ever had an assignment of any such patent, and that the letter from Day was his only information that a patent had been granted. Hence, at no time has he ever been in a position to deliver to Strauss an assignment of a patent for the process, which is the very thing he contracted to sell. Nor has he ever made the slightest effort to comply with the agreement upon which he has now received $1,400 in money, and recovered judgment in this case for $600 additional, with interest thereon.

The value of a patent for an invention rests solely on the right of the inventor to exclude others from making, using or selling, his invention. To protect the inventor and those holding under him, Congress has enacted a statute providing for an exclusive method for making assignments of patents, or any interests therein. Section 4898, Revised Statutes of the United States, provides:

"Every patent or any interest therein shall be assignable in law, by an instrument in writing; and the patentee or his assigns or legal representatives may, in like manner grant and convey an exclusive right under his patent to the whole or any specified part of the United States. An assignment, grant, or conveyance shall be void as against any subsequent purchaser or mortgagee for a valuable consideration, without notice, unless it is recorded in the patent office within three months from the date thereof."

It does not appear in this case that Brier has ever had a written assignment of patent; or that any such written assignment to him has ever been made or recorded, as provided by the statute; or that he is in a position to secure and deliver to Strauss a valid assignment; or that he has made any effort to secure, deliver or tender to Strauss such assignment, which he clearly contracted to deliver, free and clear of incumbrance, and which he

warranted to defend as against the legal claims of all other persons. So that in fact Strauss is not in possession of any legal or valuable right in connection with such alleged patent that may not actually belong to any other person. Nor does it appear that it is possible, by action at law or otherwise, for Strauss to compel a performance of the contract. Counsel for defendant in error contends that by the clause in the agreement, "and does hereby grant and convey to the party of the second part, his rights, privileges and benefits which he  *  *  *  now holds" constitutes the only conveyance contemplated. If Brier had any rights, benefits or privileges at the time, it was only the personal permission of Day to use the unpatented process, and an agreement to assign an interest in the patent in the event of its issue, covering the state of Colorado. If this language be said to refer to a government patent, then the assignment, to be valid, must be made and recorded as provided by the statute. The contract to sell, in question, clearly required a valid conveyance, and a *valid* conveyance in such case must necessarily be in writing. There can be no valid existing conveyance until it is recorded in the patent office. It is therefore the clear duty, and in this case a necessary prerequisite to the bringing of the suit, if the action might otherwise be maintained, that the plaintiff should have tendered such a conveyance. The defendant cannot be required to perform his part, and the plaintiff be permitted to perform or not, at his own will. In *Gilpin v. Watts*, 1 Colo. 479, it was said (pp. 482-3):

"It is true that the bill contains an offer to produce, subject to the order of the court, the conveyance which, it is averred, complainant had before tendered to the defendant; but there is nothing to show that such conveyance was, in fact, ever brought into court or delivered to any officer of court; and the original cause being determined by the final decree, it appears to us doubtful whether the defendant has any remedy to compel its production. The decree ought to be a final determination of the whole controversy, so far as the case made warrants.

The purchaser ought not to be required to pay the purchase-money, and then resort to his motion or bill of review, or other process, if there be any effectual to this end, to secure a conveyance.''

But the contract at best is a mere option. It contains no express or implied agreement on the part of Strauss to buy, nor to pay for the patent right. To make a contract of sale enforcible, there must be mutual obligations, and in such a case the covenant to convey and the covenant to pay are dependent obligations; each is a condition precedent to the other.—*Hoagland v. Murray*, 53 Colo. 50, 123 Pac. 664.

In this case, and for these reasons, the plaintiff is not entitled to recover under the agreement as originally made or as amended. The record discloses no equities in favor of the defendant in error. Indeed, the transaction upon his part may well be characterized in harsher terms. The judgment upon the two items under the second and third causes of action was upon different and independent transactions.

The judgment is reversed, with instructions to enter a judgment in favor of the plaintiff below in the sum of $63, the amount found to be due for merchandise and rent, and to tax the costs of the proceeding to the plaintiff.

MUSSER, C. J., and GARRIGUES, J., concurring.